IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**NICHOLAS E.HERBERT and**                                          **PLAINTIFFS**
**MARY D. MCCALEB HERBERT**

**VS.**                                **CIVIL ACTION NO.: 1:19-cv-00646-HSO-JCG**

**CITIMORTGAGE, INC., f/k/a**
**CITIFINANCIAL MORTGAGE COMPANY INC.; CITIBANK, N.A.;**
**SELECT PORTFOLIO SERVICING, INC.;**
**WILMINGTON FINANCE, INC.,**
**U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR TOWD POINT**
**MASTER FUNDING TRUST 2018-PM10, TOWD POINT MASTER FUNDING TRUST**
**2018-PM10, and JOHN AND JANE DOES A-Z**                 **DEFENDANTS**

**<u>AMENDED COMPLAINT</u>**
*Jury Trial Demanded*

COME NOW Nicholas E. Herbert and Mary D. McCaleb Herbert, plaintiffs in the above-styled and numbered cause, by and through counsel, and files this their Amended Complaint against **CITIMORTGAGE, INC., f/k/a CITIFINANCIAL MORTGAGE COMPANY INC.; CITIBANK, N.A.; SELECT PORTFOLIO SERVICING, INC., WILMINGTON FINANCE, INC., U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR TOWD POINT MASTER FUNDING TRUST 2018-PM10, TOWD POINT MASTER FUNDING TRUST 2018-PM10, and John and Jane Does A-Z**, defendants, and in support thereof would respectfully show unto the Court the following facts:

**PARTIES**

1.       The plaintiffs are adult resident citizens of Harrison County, Mississippi.

2.       The defendant, CitiMortgage, Inc., f/k/a Citifinancial Mortgage Company, Inc. is a corporation in good standing with the Office of the Secretary of State of the State of

1

Mississippi, and which may be served with process on its agent for service of process CT Corporation System of Mississippi, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232, or wherever found in the time and manner prescribed by law. CitiMortgage, Inc. is the successor-by-merger to Citifinancial Mortgage Company, Inc., and assumes all obligations and liabilities thereof.

3. Defendant, Citibank, N.A., a wholly owned subsidiary of Citigroup, is a chartered national banking association with its principle place of business at 399 Park Avenue, New York, NY 10022; which does business in the State of Mississippi, and which may be served with process in the time and manner prescribed by law.

4. Defendant, **SELECT PORTFOLIO SERVICING, INC.**, is a Utah corporation which does business in the State of Mississippi, and which may be served with process through its registered agent Corporation Service Company, 7716 Old Canton Rd, Ste C, Madison, MS 39110 in the time and manner prescribed by law. At all times, on information and belief, Select Portfolio Servicing, Inc. was acting on behalf of itself and as an agent for U.S. Bank Trust National Association, as Trustee for TOWD Point Master Funding Trust 2018-PM10.

5. Defendant, **WILMINGTON FINANCE, INC**, is a Delaware corporation which does business in the State of Mississippi, and which may be served with process through its registered agent CT Corporation System, 645 Lakeland East Drive, Ste 101, Flowood, MS 39232 in the time and manner prescribed by law.

6. Defendant, **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR TOWD POINT MASTER FUNDING TRUST 2018-PM10**, may be served with process at 300 Delaware Avenue 9th Floor, Wilmington, DE 19801 in the time and manner prescribed by law.

7. Defendant, **TOWD POINT MASTER FUNDING TRUST 2018-PM10**, is a Delaware Statutory Trust which does business in the State of Mississippi, and which may be served with process through its registered agent U.S. Bank Trust National Association at 300 Delaware Avenue 9th Floor, Wilmington, DE 19801 in the time and manner prescribed by law.

8. Defendants, John and Jane Does A-Z, are individuals and/or entities, which may include agents and representatives of CitiMortgage, Inc., CitiFinancial Mortgage Company, Inc.; Citibank, N.A., Citigroup, Select Portfolio Servicing, Inc., Wilmington Finance, Inc, , U.S. Bank Trust National Association, as Trustee for Towd Point Master Funding Trust 2018-PM10, Towd Point Master Funding Trust 2018-PM10 and/or other individuals and/or entities who were directly involved with and/or who directed and/or controlled the acts and omissions referred to in this Complaint, whose conduct subjects them to individual liability under applicable law. During or after discovery, Plaintiffs will amend their Complaint to properly identify John and Jane Doe Defendants A-Z once their true identities and liability are learned. All allegations herein are incorporated, by reference, against John and Jane Doe Defendants A – Z.

9. CitiFinancial Mortgage Company, Inc. allegedly purchased the Plaintiffs' refinance mortgage from Wilmington Finance in or about May, 2006. CitiMortgage, Inc. is the successor by-merger to Citifinancial Mortgage Company, Inc., and assumes all obligations and liabilities thereof. CitiMortgage, Inc. advises the Plaintiffs that their loan is currently owned by Citibank, N.A., who assumes all obligations and liabilities related thereto. Additionally, and in the alternative, Citibank, N.A. may be liable to the Plaintiffs, and/or is the co-principal of CitiMortgage, Inc., because it directly participated in and/or directed and/or controlled the acts and omissions set forth throughout this Complaint.

10.    Unless otherwise specified, Plaintiff will use the term "Citi" to jointly refer to CitiMortgage, Inc., Citibank, N.A., and John and Jane Does A-Z.

## JURISDICTION

11.    This Court has jurisdiction over the subject matter and parties. The claims concern property, real and personal, located in this jurisdiction district. Venue is proper in the Court and judicial district.

12.    This Court has jurisdiction over the parties and subject matter of this civil action pursuant to 28 U.S.C. §1332(a), because it involves a controversy between citizens of different states that exceeds the sum of $75,000; and/or pursuant to 28 U.S.C. § 1331, because it involves some claims that arise under the laws of the United States.

13.    Venue is appropriate in this Court pursuant to 28 U.S.C. 1391(b), because this is the judicial district in which a substantial part of the events, acts and omissions giving rise to Plaintiffs' claims occurred.

## UNDERLYING FACTS

14.    This case began as a civil action alleging breach of contract, bad faith breach of contract, fraud, violations of the 12 U.S.C.A. §§ 2605, et. seq.

15.    That on or about August 23, 2017 a settlement agreement was reached between the Plaintiffs and Defendant Citi. As stated in the Settlement Agreement, plaintiffs vacated the residence/property located at 2081 Pat Lane in Biloxi, Mississippi on or about June 30, 2017. See Exhibit 1.

16.    That on or about September 27, 2017 an Agreed Judgment of Dismissal was signed and entered by the Honorable Louis Guirola, Jr., Chief U.S. District Judge. As stated in

said Judgment, the U.S. District Court for the Southern District of Mississippi, Southern Division retained jurisdiction to enforce the settlement agreement. See Exhibit 2.

17. Plaintiffs received a certified return receipt default letter from Citimortgage dated October 18, 2017. See Exhibit 3.

18. Plaintiffs received a certified return receipt letter from the property preservation team of Citimortgage dated January 5, 2018 whereby Citi exercised the right to inspect the residence located at 2081 Pat Lane. The letter states that the inspection indicates that the residence is potentially vacant which may impact the terms and conditions of the insurance policy of the property. That property preservation such as securing, winterizing, and maintaining the interior and exterior is the responsibility of plaintiffs. See Exhibit 4.

19. Plaintiffs received a letter from Citimortgage dated January 31, 2018 sent by Amanda Ruiz, Homeowner Support Specialist (Loss Mitigation Department for repayment plans, loan modifications and short sales). See Exhibit 5.

20. Plaintiffs received a letter from Citimortgage dated February 6, 2018 regarding the delinquency of the loan on the 2081 Pat Lane property, confirming that Amanda Ruiz is the homeowner support contact person, and that demand letters and foreclosure notices will be sent regarding the delinquent loan account. See Exhibit 6.

21. Plaintiffs received a letter from Citimortgage dated March 6, 2018 soliciting a loan modification to prevent possible foreclosure proceedings 14 days after the date of the letter. Page 2 of the letter states that "Citimortgage, Inc. intends to initiate a foreclosure on the mortgaged property in the name of Citimortgage, Inc. ("noteholder"). See Exhibit 7.

22. Plaintiffs received a letter from Citimortgage dated April 10, 2018 requesting that various financial hardship solutions be explored to either remain in the home, sell the property, or return ownership to Citi. See Exhibit 8.

23. Plaintiffs received a demand letter from Citimortgage dated April 10, 2018 for a past due amount of $126,569.25. See Exhibit 9.

24. Plaintiffs received a mortgage account statement from Citimortgage dated April 17, 2018 stating that a payment in the amount of $127,620.98 is due by May 1, 2018. Please note that the statement includes fees for maintaining property. See Exhibit 10.

25. Plaintiffs received a letter from Jason Tingle, Esquire with Jaragui and Lindsey, attorneys at law dated May 17, 2018 advising that they represent Citimortgage and they have been instructed to begin foreclosure proceedings on the property located at 2081 Pat Lane in Biloxi, Mississippi. See Exhibit11.

26. Plaintiffs received a mortgage account statement from Citimortgage dated May 17, 2018 stating that a payment in the amount of $128,802.71 is due by June 1, 2018.
Please note that the statement includes fees for maintaining property. This statement states "as of May 27, 2018, your account is 2,908 days delinquent. The loan is in foreclosure, and fees and costs will continue to accrue unless the loan is fully reinstated or paid in full. You must contact the Citimortgage foreclosure attorney identified on page 1 for the current reinstatement amount or the payoff amount." See Exhibit 12.

27. Plaintiffs received a letter from Citimortgage dated June 4, 2018 requesting insurance information for the property located at 2081 Pat Lane in Biloxi, Mississippi. See Exhibit 13.

28. Plaintiffs submitted an email to the Chief Executive Officer of Citigroup, Michael Corbat on or about June 8, 2018 regarding foreclosure proceedings. See Exhibit 14.

29. Plaintiffs received a letter dated June 14, 2018 from Teri Null, Executive Response Unit within Citimortgage responding to the June 8, 2018 email stating that foreclosure activity has been initiated in order for Citimortgage to obtain title to the property. See Exhibit 15.

30. Plaintiffs received a mortgage statement from Citimortgage dated June 19, 2018 stating payment amount of $138,640.38 is due by July 1, 2018. See Exhibit 16.

31. Plaintiffs received a letter from Citimortgage dated June 20, 2018 stating that loan modification and other programs are available through the Service Members Civil Relief Act. See Exhibit 17.

32. Plaintiffs received from Citimortgage dated June 29, 2018 an Escrow Account Statement for Account history and release for servicing analysis. See Exhibit 18.

33. Plaintiffs received a letter from Select Portfolio Servicing, Inc. (SPS) dated July 6, 2018 advising that the servicing of the mortgage loan for 2081 Pat Lane was transferred from Citimortgage to SPS effective June 29, 2018. See Exhibit 19.

34. Plaintiffs received a letter from SPS dated July 6, 2018 requesting that insurance information for the property located at 2081 Pat Lane in Biloxi, Mississippi. See Exhibit 20.

35. Plaintiffs received a mortgage statement from SPS dated July 11, 2018 stating that loan has been referred for legal action, to include fees and costs for foreclosure. See Exhibit 21.

36. Plaintiffs received a default letter from SPS dated July 11, 2018 offering possible options to retain home including but not limited to loan modification. See Exhibit 22.

37. Plaintiffs received a certified final notice letter from SPS dated August 10, 2018 demanding that insurance information be provided. See Exhibit 23.

38. Plaintiffs received a notice of placement of insurance from SPS dated September 12, 2018. Included is a copy of the insurance policy showing that the beneficiary of the policy is Select Portfolio Servicing, Inc. and that the borrower is Nicolas Herbert. See Exhibit 24.

39. Plaintiffs received a letter from SPS dated October 12, 2018 stating that plaintiffs have been approved for a trial loan modification, that payments in the amount of $794.90 be made on November 1, 2018, December 1, 2018 and January 1, 2019. See Exhibit 25.

40. Plaintiffs received a Notice of Violation from the City of Biloxi stating there are several code violations at the property located at 2081 Pat Lane. The City of Biloxi will reinspect the property on November 5, 2018 and failure to take action will result in plaintiffs being issued a summons to appear in Municipal Court. See Exhibit 26.

41. Plaintiffs received a letter from SPS dated October 23, 2018 stating that as the mortgage servicer, Oliver Munoz, Relationship Manager, has been assigned to the loan. Mr. Munoz has resolution options to help avoid foreclosure. See Exhibit 27.

42. Plaintiffs received a letter from SPS dated October 24, 2018 stating that the documents in their files from Citimortgage shows that the account was due for the June 1, 2010, or 101 payments. Documents provided by Citimortgage to SPS do not include a settlement agreement. See Exhibit 28.

43. Plaintiffs filed a Notice of Motion, Motion to Enforce Settlement Agreement, Impose Sanctions and Award Damages and a draft Brief regarding same dated October 30, 2018.

44. Citi then filed itResponse in Opposition to Plaintiffs' Motion to Settlement Agreement, Impose Sanctions and Award Damages on November 27, 2018.

45. Plaintiffs received a loss mitigation letter from SPS dated December 3, 2018.

46. Plaintiffs' received City of Biloxi Court Summons dated December 4, 2018 to appear in court for code violations found on the residence located at 2081 Pat Lane on January 8, 2019.

47. Plaintiffs' received a letter from SPS dated December 7, 2018 stating that the property located at 2081 Pat Lane is vacant and that per the mortgage documents, property preservation such as securing, winterizing, and maintaining the exterior is the Herberts' responsibility and that failure to do so could result in an additional expense to the Herberts. SPS requested that the Herberts' provide SPS with verbal or written verification within ten days of the date of the letter that the property has been secured, winterized, and/or the exterior maintained.

48. Magistrate Judge Robert Walker entered a minute entry regarding the telephonic conference held on December 11, 2018 wherein Defense counsel Reid Manley advised that the loan and servicing of same had been sold to Select Portfolio Servicing, Inc. (SPS). The Herbert's counseladvised the Herbert's would be filing a Motion to Reopen the Case and if granted, may be filing a Motion to Amend the Complaint to add SPS as a party to the case.

49. Plaintiffs' Motion to Reinstatement Case or in the Alternative to Enforce and Reconsider Settlement and for Damages was filed January 11, 2019.

50. The Herbert's subsequently received a Mortgage Statement from SPS dated January 14, 2019.

51. Defendants' Response in Opposition to Plaintiffs' Motion to Reinstate Case, or in the Alternative, to Enforce and Reconsider Settlement and for Damages dated January 25, 2019.

52. The Herbert's subsequently received a monthly mortgage statement from SPS dated February 12, 2019.

53. Plaintiffs filed their Reply to Citi's Response in Opposition to Plaintiffs' Motion to Reinstate Case, or in the Alternative, to Enforce and Reconsider Settlement and for Damages on February 15, 2019.

54. The Herbert's subsequently received a a certified return receipt letter from Rubin Lublin dated March 8, 2019 noticing the right to foreclose and must give 45 days for the right to foreclose.

55. The Herbert's subsequently received a 2nd certified return receipt letter from Rubin Lublin dated March 8, 2019 notice of acceleration and foreclosure sale date of May 1, 2019.

56. During all times relevant, Plaintiff, Nicholas Herbert, suffered from a medical condition that is aggravated or worsened by stress. The actions and inactions of Defendants have aggravated or exacerbated his pre-existing medical conditions.

## COUNT ONE

### BREACH OF CONTRACT

56. The allegations contained and set forth hereinabove are adopted and re-alleged herein by reference the same as if fully copied herein in words and figures.

57. Within every contract there is an expectation of good faith and fair dealings. Moreover, due to the nature of the settlement agreement entered herein, settlement was reached in an effort to bring finality to a matter that had been pending for many years and had caused the Plaintiffs great hardship, financially, emotionally, and physically.

58. The settlement reached in the previous case called for the Plaintiffs to surrender the property to Citi, for Citi to obtain ownership and possession of the property, and, was to be "effective as a full and final accord and release of each and every matter between the parties," including any outstanding sums, or debt, owed by Plaintiffs to Citi.

59. Citi was under a contractual duty to exercise good faith and ordinary care in relation to the performance of the obligations imposed upon it under the settlement agreement. Said defendant with gross and wanton negligence failed to perform the contractual obligations imposed upon it.

60. Citi knew that it was bound by the terms of the settlement agreement entered into between Citi and the plaintiffs but, nevertheless, wrongfully and without logical or reasonable basis, refused to act upon the taking of the property;

61. Citi did, in fact, initiage foreclosure in June 2018.

62. Almost immediately thereafter, upon information and belief, Citi, ignoring its requirements under the settlement agreement, sold the underlying note and deed of trust to a third party, namely Select Portfolios Servicing, Inc.  This is strikingly interesting, as at this point, no sums were due under the promissory note under the terms of the settlement agreement.  Citi sold a "phantom debt".

63. However, upon review of the land records of Harrison County, Mississippi, Second Judicial District, it is evident that the loan in question has been sold and/or transferred twice since settlement was reached.  The first assignment occurred on July 12, 2018, from Citimortgage, Inc., the defendant herein, to TOWD Point Master Funding Trust 2018-PM10. (See Assignment of Mortgage/Deed of Trust, a copy of which is attached hereto as Exhibit 29). Thereafter, being on or about October 5, 2018, by and through its attorney in fact, Select Portfolio Servicing, Inc., TOWD Point Master Funding Trust 2018-PM10 transferred its interest in the loan to U.S. Bank Trust National Association, as Trustee for TOWD Point Master Funding Trust 2018-PM10.  (See Corporate Assignment of Deed of Trust, a copy of which is attached hereto as Exhibit 30).

64. At this point, Citi**, through its own course of conduct, was without the ability to fulfill its obligation(s) under the settlement agreement**

65. During the months that followed, Plaintiffs endured a constant barrage of

11

collections efforts by Select Portfolio Servicing, Inc, presumably on behalf of TOWD Point Master Funding Trust 2018-PM10 or U.S. Bank Trust National Association, as Trustee for TOWD Point Master Funding Trust 2018-PM10.  Based on representations made by Select Portfolio Servicing, Inc., Citi did not make it aware of this litigation, the bankruptcy, the settlement of this matter, or anything else.  Simply put, on information and belief, Citi simply transferred the loan without a word.  Since the settlement agreement was entered, Select Portfolio Servicing, Inc. has even demanded that the Herberts *reoccupy the home*, in direct violation of the terms of the settlement agreement**.**

66. Citi's inaction in consummating the settlement has additionally caused the Herberts to face actions by the City of Biloxi due to the condition of the property, all despite the fact that Citimortgage, Select Portfolio Servicing, Inc. and/or TOWD Point Master Funding Trust 2018-PM10 have continued to "charge" the Herberts with maintenance fees.  Citi's delay has further, or will further impair the Herberts credit standing and ability to move forward with their lives.

67. The Herberts informed Select Portfolio Servicing, Inc, TOWD Point Master Funding Trust 2018-PM10 and U.S. Bank Trust National Association, as Trustee for TOWD Point Master Funding Trust 2018-PM10 of the settlement and the bankruptcy.

68. Select Portfolio Servicing, Inc, presumably on behalf of TOWD Point Master Funding Trust 2018-PM10 or U.S. Bank Trust National Association, as Trustee for TOWD Point Master Funding Trust 2018-PM10, failed to conduct a reasonable investigation of the law and facts surrounding its duties under said contract and failed to conduct itself in accord with its legal duties.

69. As a proximate consequence of the Defendants' tortious conduct and breach of contract, the plaintiffs have been caused to suffer injuries, loss and damages.

70. The actions of the Defendants, as set forth hereinabove, exhibit conduct so grossly negligent and inexcusable as to amount to reckless disregard for the rights of the plaintiffs. Such

conduct on the part of the Defendants entitles the plaintiffs to an award of punitive damages and attorneys' fees of and from the Defendants for tortious breach of contract.

71. The Defendants had a duty of good faith dealing and to conduct themselves toward the Plaintiffs in accordance with this duty under the Contracts. The Defendants breached this duty, for which the Plaintiffs are entitled to extra-contractual damages, in addition to those allowed for breach of contract.

72. The Plaintiffs are entitled to all compensatory damages proximately caused by the bad faith breach of contract by the Defendants.

73. The Defendants breached the contracts with the Plaintiffs willfully, tortiously and in bad faith, for which the Plaintiffs are entitled to extra-contractual damages, in addition to those allowed for breach of contract.

74. The bad faith of the Defendants in their treatment of the Plaintiffs and breach of the contract, without arguable legal justification, was such that punitive damages should be awarded in an amount necessary to deter the Defendants and others from such conduct in the future.

## COUNT TWO

### NEGLIGENCE AND/OR GROSS NEGLIGENCE

75. The allegations contained and set forth hereinabove are adopted and re-alleged herein by reference the same as if fully copied herein in words and figures.

76. The Defendants owed a duty to exercise ordinary care and diligence to ensure that it met contractual obligations to Plaintiff. Select Portfolio Servicing, Inc, TOWD Point Master Funding Trust 2018-PM10 and U.S. Bank Trust National Association, as Trustee for TOWD Point Master Funding Trust 2018-PM10 assumed those duties when the mortgage was assigned to them.

77. The defendant knew or should have known that the settlement agreement had been reached, the terms thereof, and that collection activities on the loan were prohibited, as the

loan no longer existed.

78.     The Plaintiffs are entitled to all compensatory damages proximately caused by the negligence of the Defendants.

79.     Such conduct on the part of said defendants entitles the plaintiff to an award of punitive damages and attorneys' fees of and from said defendant for gross negligence amounting to bad faith as evidenced by failure to honor its contractual commitment to pay the taxes due in spite of repeated verbal and written requests to save their customers' property by doing so.  The Defendants' egregious negligence has caused Plaintiffs to suffer prolonged mental anguish and emotional distress, together with the loss of their home.

## COUNT THREE

### NEGLIGENT MISREPRESENTATION

80.     The allegations contained and set forth hereinabove are adopted and re-alleged herein by reference the same as if fully copied herein in words and figures.

81.     At the time of negotiation and entering into the agreement as set forth hereinabove, Citi made representations concerning the transfer of property from the Plaintiffs to it, including, but not limited to, the acceptance of a deed in lieu of foreclosure or foreclosure by Citi.  Citi had no intent on fulfilling its obligations under the agreement

82.     The representations made by Citi were false and Citi negligently misrepresented them.

83.     Plaintiffs believed the representations and in reliance upon them entered into the settlement agreement and vacated the premises.

84.     Plaintiffs are entitled to damages, compensatory as well as punitive, from Citi for its actions in violation of the rights of Plaintiffs.

## COUNT FOUR

### VIOLATION OF FAIR CREDIT REPORTING ACT

85. The allegations contained and set forth hereinabove are adopted and re-alleged herein by reference the same as if fully copied herein in words and figures.

86. The Defendants are liable to Plaintiffs for their negligent, grossly negligent and/or willful and malicious reporting of the Plaintiffs' credit adversely as a result of the Defendants' own tortious breach of contract. In spite of the fact that the settlement agreement, the Defendants wrongfully continued to report plaintiffs' loan.

## COUNT FIVE

### VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

87. The allegations contained and set forth hereinabove are adopted and re-alleged herein by reference the same as if fully copied herein in words and figures.

88. The Defendants are liable to Plaintiffs for their grossly negligent and/or willful and malicious actions in collecting a phantom debt, that is, a debt that no longer existed due to the settlement agreement.

89. All of the Defendants knew or should have known of the settlement reached between Citi and the Plaintiffs.

90. The Defendants refused to act under the terms of the settlement agreement, but instead went as far as demanding that the Plaintiffs reoccupy the home, in direct violation of the terms of the settlement agreement.

## COUNT SIX

### CIVIL CONSPIRACY

91. The allegations contained and set forth hereinabove are adopted and re-alleged herein by reference the same as if fully copied herein in words and figures.

92. Plaintiffs are informed and believe and thereon allege that sometime after the settlement agreement was entered and the present, Defendants did knowingly and willfully conspire and agree among themselves to: (1) misrepresent to Plaintiffs the status of the settlement agreement, the knowledge of the settlement agreement and/or the status of the

underlying mortgage loan; (2) entice Plaintiffs into negotiating a restructuring of the mortgage loan or demanding payments on the mortgage loan; and (3) convert Plaintiffs' funds and/or property for their own use and benefit.

93. In furtherance of said conspiracy and agreement, the aforementioned Defendants engaged in fraudulent representations, omissions and concealment of facts, acts of cover-up and statements calculated to benefit Defendants and as set forth in detail in the foregoing paragraphs, which are hereby incorporated herein as though set forth in full.

94. All of the actions of Defendants set forth in the preceding paragraphs, incorporated herein, were in violation of the rights of Plaintiffs and committed in furtherance of the conspiracies and agreements. Moreover, each of the aforementioned Defendants lent aid and encouragement and knowingly ratified and adopted the acts of the other.

95. As a proximate result of the wrongful acts herein alleged, Plaintiffs have suffered significant damage to be determined at trial.

96. These acts constituted malicious conduct which was carried on by said Defendants with willful and conscious disregard for Plaintiffs' rights with the intention of misappropriating Plaintiffs' funds or otherwise causing injury, and was despicable conduct that subjected Plaintiffs to a cruel and unjust hardship so as to justify an award of exemplary and punitive damages. Accordingly, punitive damages should be awarded against Defendants to punish them and deter them and other such persons from committing such wrongful and malicious acts in the future.

## COUNT SEVEN

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

97. The allegations contained and set forth hereinabove are adopted and re-alleged herein by reference the same as if fully copied herein in words and figures.

98. The Defendants' conduct, either acting alone or in concert, in attempting to collect on this phantom debt, as set forth hereinabove, was such that a reasonably careful

business would not do under similar circumstances.

99. The Defendants, either acting alone or in concert, were was negligent in such collection activities, causing the Plaintiffs to suffer physical harm with emotional distress, in that such conduct exacerbated Plaintiff Nicholas E. Herbert's existing medical conditions.

100. The Defendants' conduct, either acting alone or in concert, was a substantial factor in causing the exacerbation of Plaintiff Nicholas E. Herbert's existing medical conditions and emotional distress.

101. It was foreseeable and/or predictable that the Defendants' conduct, either acting alone or in concert, would cause the exacerbation of Plaintiff Nicholas E. Herbert's existing medical conditions and emotional distress.

## DAMAGES

The Plaintiffs pray that a judgment be entered in their favor against the defendants as follows:

1. Compensatory damages against said defendants, in such amount as may be set by the jury in this case as reasonable compensation for the compensatory damages sustained by the plaintiffs as allowed under law in an amount in excess of the minimum jurisdiction limits of this Court; as follows:

    a. Breach of contract

    b. Tortious breach of contract

    c. Bad faith breach of contract

    d. Negligence

    e. Gross negligence

    f. Negligent inducement

    g. Violation of the Fair Debt Collection Practices Act

    h. Violation of the Fair Credit Reporting Act

    i. Civil conspiracy

      j.      Exacerbation of Plaintiff Nicholas E. Herbert's existing medical conditions mental anguish and emotional distress;

      k.      Injury and damage to credit reputation and standing;

      l.      Attorney's fees and costs incurred in attempting to vindicate their rights under the settlement agreement.

2. Punitive damages against the Defendants in an amount sufficient to punish said defendant for its egregious conduct and to deter the Defendants and others similarly situated from engaging in such conduct in the future.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request judgment against the Defendants for compensatory and punitive damages in an amount exceeding the minimal jurisdictional limits of this Honorable Court, together with pre-judgment and post judgment interest, and all costs of Court herein accruing.

DATED:  December 12, 2019.

          Respectfully submitted,
          Nicholas E. Herbert and Mary D. McCaleb Herbert


          By: /s/ Joel L. Blackledge
              JOEL L. BLACKLEDGE (MSB NO. 10606)
              Attorney for Plaintiffs

BLACKLEDGE LAW FIRM, P.A.
Joel L. Blackledge
MS State Bar No. 10606
P.O. BOX 8155
GULFPORT, MS 39506
Phone:   228-669-6254
Fax:     886-604-0786
E-mail:  joel@blackledgelawfirm.com